412 So.2d 743 (1982)
In re Removal of Lloyd W. ANDERSON, Justice Court Judge.
No. 53190.
Supreme Court of Mississippi.
April 7, 1982.
Wells, Wells Marble & Hurst, Erskine W. Wells, Charles P. Quarterman, Jackson, for Mississippi Commission on Judicial Performance.
Gex, Gex & Phillips, Walter J. Gex, III, Joseph H. Benvenutti, Bay St. Louis, for Lloyd W. Anderson.
En Banc.
WALKER, Justice, for the Court:
This case is before us upon the recommendation of the Mississippi Commission on Judicial Performance that Lloyd W. Anderson, a Justice Court Judge of District *744 Three, Hancock County, be removed from office.
We concur with the finding of the Commission that the conduct of Anderson constituted willful misconduct in office. We also accept the recommendation of the Commission that Anderson be removed from office and direct his removal.
By concurrent resolution passed in 1979, the Legislature submitted to the people a proposed amendment to Article 6 of the Mississippi Constitution of 1890 by adding Section 177A, which was ratified by the electorate November 6, 1979, and thereafter became a part of our State Constitution.
Section 177A directs the formation of a Commission on Judicial Performance of this State, which is composed of seven members: three judges of courts of record, which are trial courts of original jurisdiction; one judge of a justice court; two resident lay persons who have never held judicial office or been members of the Mississippi Bar; and one practicing attorney.
After directing the formation of the Commission and the composition of its membership, Section 177A reads, in part, as follows:
On recommendation of the commission on judicial performance, the supreme court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: (a) actual conviction of a felony in a court other than a court of the State of Mississippi; (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; (d) habitual intemperance in the use of alcohol or other drugs; or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute; and may retire involuntarily any justice or judge for physical or mental disability seriously interfering with the performance of his duties, which disability is or is likely to become of a permanent character.
... .
All proceedings before the commission shall be confidential, except upon unanimous vote of the commission. After a recommendation of removal or public reprimand of any justice or judge is filed with the clerk of the supreme court, the charges and recommendations of the commission shall be made public. The commission may, with two-thirds (2/3) of the members concurring, recommend to the supreme court the temporary suspension of any justice or judge against whom formal charges are pending. All proceedings before the supreme court under the section and any final decisions made by the supreme court shall be made public as in other cases at law.
The provisions of Section 177A have been implemented by legislative enactments providing for a commission on judicial performance, the terms of office of its members, authority as to procedures before it, and its administration. Miss. Laws, ch. 511 (1979); Miss. Laws, ch. 385 (1980) (codified at Mississippi Code Annotated § 9-19-1 et seq. (Supp. 1981)).
Mississippi Code Annotated section 9-19-17 provides:
A justice or judge removed by the supreme court or the seven-member tribunal is ineligible for judicial office... .
A Mississippi Commission on Judicial Performance was duly appointed and constituted. Pursuant to authority granted under Mississippi Code Annotated section 9-19-23 (Supp. 1981), the Commission adopted rules implementing the legislative enactment, including rules of practice and procedure before it, which were approved by order of this Court on July 9, 1980. The complete rules of the Commission are recorded in 385 So.2d at XXII-XXXV.
Rule 8D provides:
Facts requiring action of the Commission shall be established by clear and convincing evidence... .
Rule 8F provides:
The Commission recommendations to the Supreme Court for discipine [sic] may include removal from office, suspension, fine, public censure or reprimand, or retirement. In addition, the Commission may privately admonish a judge as provided by law... .
*745 Rule 10 provides for the prompt filing of the record, the findings and recommendations of the Commission with this Court, the briefs of the parties, and our review.
Rule 10E contains the scope of our review:
Based upon a review of the entire record, the Supreme Court shall prepare and publish a written opinion and judgment directing such disciplinary action, if any, as it finds just and proper. The Supreme Court may accept, reject, or modify, in whole or in part, the findings and recommendation of the Commission. In the event that more than one (1) recommendation for discipline of the judge is filed, the Supreme Court may render a single decision or impose a single sanction with respect to all recommendations.
There are two types of official conduct condemned by Section 177A:
(b) willful misconduct in office; and
(e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute.

Courts in other jurisdictions with constitutional provisions as our own Section 177A have attempted to construe these provisions.
The North Carolina Supreme Court had occasion to state in the case of In re Peoples, 296 N.C. 109, 250 S.E.2d 890, 918 (1978):
We have heretofore attempted to define wilful misconduct and conduct prejudicial to the administration of justice in general terms... . Like fraud, however, these terms are "so multiform" as to admit of no precise rules or definition... .
The North Carolina Supreme Court in the case of In re Nowell, 293 N.C. 235, 237 S.E.2d 246, 255 (1977), reiterated the definitions of the California Supreme Court:

Willful misconduct in office is the improper or wrongful use of the power of his office by a judge acting intentionally, or with gross unconcern for his conduct, and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith....
Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute. (Emphasis theirs).
Based upon its facts and findings, the Commission unanimously found upon clear and convincing evidence that Anderson's conduct constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute as set forth in Section 177A.
By a vote of five to two the Commission recommends this Court remove Anderson from the office of Justice Court Judge, District 3, Hancock County, Mississippi as provided by Section 177A of the Mississippi Constitution. One dissent as to the recommendation of penalty to be imposed recommends that Anderson be suspended from his present office for a period of ten years. The other dissent would have found the charges against Anderson as to Torrence and Ligon were not sustained by clear and convincing evidence, and recommends that Anderson be suspended from office for a period of six and one-half years.
Rule 3H to the Commission provides a two-thirds vote of the Commission shall be required for any action pertaining to its disciplinary authority.
Section 177A does not give the Commission power to actually impose any sanction against a judicial officer, but simply to recommend.
*746 Also Rule 10E of the Commission above quoted empowers this Court to accept, reject or modify, in whole or in part, the findings and recommendations of the Commission.
Therefore, it appears we are required to be a factfinding body, at least to some degree, in every case of this nature. California's constitutional provision is almost identical to our Section 177A. We believe the standard announced by the Supreme Court of California in Geiler v. Commission on Judicial Performance, 10 Cal.3d 270, 110 Cal. Rptr. 201, 515 P.2d 1, 4 (1973), is the standard we should adopt in this State for review by the tribunal:
[S]ince the ultimate, dispositive decision to censure or remove a judge has been entrusted to this court, we conclude that in exercising that authority and in meeting our responsibility we must make our own, independent evaluation of the record evidence adduced below. After conducting such a review we may then decide as a question of law whether certain conduct, which we may have found as a fact to have occurred, was "wilful misconduct in office" or "conduct prejudicial to the administration of justice that brings the judicial office into disrepute... ." Finally, it is to be our findings of fact and conclusions of law, upon which we are to make our determination of the ultimate action to be taken, to wit, whether we should dismiss the proceedings or order the judge concerned censured or removed from office.
See also In re Haddad, 128 Ariz. 490, 627 P.2d 221 (1981); West Virginia Judicial Inquiry Commission v. Dostert, 271 S.E.2d 427 (W. Va. 1980); In re Jordan, 290 Or. 303, 622 P.2d 297 (1981); In re Cieminski, 270 N.W.2d 321 (N.D. 1978); In re Nowell, supra; In re Brown, 512 S.W.2d 317, 320 (Tex. 1974).
The power to impose sanctions is delegated solely to this Court; it therefore follows we have an obligation to conduct an independent inquiry of the record in order to make our final determination of the appropriate action to be taken in each case. In so doing, we will accord careful consideration the findings of fact and recommendations of the Commission, or its committee, which has had the opportunity to observe the demeanor of the witnesses.
On December 8, 1980, the Commission, acting through its executive director, initiated a written, formal complaint against the respondent Lloyd W. Anderson, official justice court judge of District Three, Hancock County. The complaint is in the form of a chancery court bill of complaint, and sets forth in detail all acts of misconduct upon which proof was offered at the hearing. Proper notice was given to Anderson, an answer was filed on January 15, 1981, and a hearing was held before a committee of the Commission on April 9, 1981.
We first deal with the conduct of Anderson in charging traffic violators a greater sum to be paid as a fine than that officially reported and paid to the county.
Cecil Jones, investigator with the State Department of Audit, interviewed Anderson in June, 1979, on the complaint of Gary M. Cooke's mother, a Florida resident, that she had upon demand paid her son's fine twice. The first payment was a $33.00 money order signed and cashed by Anderson, with no credit given to Cooke. A few weeks later a $35.00 money order was mailed to Anderson, for which he gave official credit of $31.00. At first Anderson's explanation was that it was a mistake, and upon further questioning he stated he sometimes charged a "late fee." According to Jones, when he asked Anderson what authority he had for charging a late fee, he received no answer, and when asked who got the money for the late fee, Anderson became a little nervous, turned away, and said he would rather not talk about it any more.
Thereafter, Jones was assigned to do an investigation of Anderson's office, and called upon him again August 27, 1979, to get the necessary paperwork, including court dockets and traffic tickets. At Jones' request, Anderson delivered approximately 225 traffic tickets issued during the months of April, May, and June of 1979. Only 105 *747 of these tickets were legible. Letters were mailed on these 105 tickets requesting the violators to reply with an explanation of how much they had paid, and to whom. Thirty-three letters were returned undelivered because the addressee was unknown or moved, or for similar reasons. Fifteen replied they had paid a fine, but did not send proof of payment.
Of 72 recipients of traffic tickets, Jones received written documentation from 35 of the amount paid. All showed overpayments. In the vast majority of instances, Anderson had charged the violator $33.00, while reporting $31.00 to the county. There were two instances of charging $35.00 while reporting $31.00, two of charging $39.00 while reporting $35.00, one of charging $39.00 while reporting $33.00, and an instance of collecting $70.00 while reporting $31.00. Also, he collected $99.00 from the employer of three defendants, but only reported $31.00 to the county, leaving $68.00 unpaid. Attached to this opinion as Appendix "A" is a schedule of these overpayments.
While Anderson received these amounts in fines (in most of the instances upon written demand specifying the amount), he or his office would prepare and transmit an official receipt to the violator for the lesser amount. Also, the justice court dockets showed Anderson had received the lesser amount. Finally, in his official reports to the Chancery Clerk of Hancock County itemizing the fines collected for the previous month, which he was required by law to make on or before the first Monday of each month, Anderson reported receipt of the lesser sum. In this manner, Anderson failed to report a total of $214.00 for these particular tickets, retaining and converting this sum to his own use.
In his answer Anderson alleged that he received a total of 5,346 traffic citations in 1979, and that for the months of April, May, June, 1979, his office handled 1,118. His defense was that these overcharges were mistakes. His wife testified she did most of the major bookkeeping except during the months of April, May and June, 1979, when she was sick and assisted by her sister-in-law. The sister-in-law did not testify.
The only tickets on which any investigation was made were those furnished by Anderson to Jones, the field investigator for the Auditing Department. The record made before the Commission reveals a clear, consistent pattern of petty embezzlements totaling $214.00. Anderson handled a very heavy volume of tickets, according to his answer. If the processing of the tickets furnished Jones had been errors in bookkeeping by his sister-in-law, he had every opportunity to present to the Commission records of other fines levied to show a pattern of rectitude on the part of himself and his office. No such proof was offered by him.
We concur in the finding of fact of the Commission that by clear and convincing evidence Anderson was shown to have violated the following duties imposed upon him by law and the Code of Judicial Conduct.
(1) Anderson unlawfully converted $214.00 in public money to his own use, failed to keep an accurate entry of each and every sum of public money he received, and willfully and fraudulently made false entries on his monthly report and claim form and certified the same was genuine, when not genuine, in violation of Mississippi Code Annotated section 97-11-29 (Supp. 1981).
(2) Anderson violated the statutory duty imposed upon him as a justice court judge by Mississippi Code Annotated section 97-11-29 (Supp. 1981), to account for all fines imposed by him to the clerk of the board of supervisors and to pay the monies into the county treasury.
(3) This conduct violated Canons 1, 2A and 3B of the Code of Judicial Conduct of Mississippi Judges.
The Canons the Commission found Anderson to have violated are attached as Appendix "B" to this opinion.
The Commission also found misconduct with regard to the manner in which Anderson handled two traffic tickets presented *748 him by Officer Silkwood, a Mississippi Highway Safety Patrolman. One concerned a Mr. Torrence and the other a Mr. Ligon.
In each case the underlying question involved the constitutional guarantees of due process. See Article 3, Sections 14 and 26, Mississippi Constitution of 1890. Many volumes have been written attempting to define these rights. Lawyers, judges, and legal scholars are very often in disagreement as to their applicability in a given fact situation. Absent proof of malice or ill will, the question of due process should be remedied, if necessary, by appeal or otherwise and not through disciplinary proceedings.
We are of the further opinion that the improper handling of the Torrence and Ligon cases was not of such magnitude as to constitute "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." Mr. Torrence and Mr. Ligon were understandably unhappy when they learned that speeding convictions had been entered against them, (but suspended) when they thought that the highway patrolman was "giving them another chance" and that the matter would not go before any court. However, Anderson explained that the highway patrolman said he told Torrence and Ligon that he would give them another chance and ask the justice court judge (Anderson) to suspend the sentences, which is what Anderson did. The patrolman did not testify.
Our justice court system, particularly with regard to traffic violations, operates in a layman oriented, non-technical atmosphere and errors are going to occur. However, dishonesty is not to be tolerated and without considering the incidents involving Torrence and Ligon, there remains sufficient grounds for the removal of Anderson as heretofore discussed.
Therefore, the recommendations of the Commission that Lloyd W. Anderson be removed from office as Justice Court Judge of District Three of Hancock County is accepted, and his removal is so ordered and directed upon the filing of this opinion.
REMOVAL OF LLOYD W. ANDERSON AS JUSTICE COURT JUDGE OF DISTRICT THREE OF HANCOCK COUNTY IS HEREBY ORDERED AND DIRECTED THIS DATE.
PATTERSON, C.J., SUGG, P.J., and ROY NOBLE LEE, BOWLING and DAN LEE, JJ., concur.
HAWKINS, BROOM and DARDEN, JJ., specially concur.

APPENDIX A

DISPOSITION OF UNIFORM TRAFFIC CITATIONS BY JUSTICE COURT JUDGE

LLOYD W. ANDERSON

TOTAL COST PAID

TICKET TICKET PER JUDGE'S PER
DATE NO. REPORT DEFENDANT DIFFERENCE
1979
 -- Billy Asher --- $31.00 $33.00 $ 2.00
 -- Ronny Crosby --- 31.00 33.00 2.00
4-9 Jerry Easley 1840688 31.00 35.00 4.00
4-9 L. Hairston 1840689 31.00 33.00 2.00
4-11 Robert Evans 1840837 31.00 70.00 39.00
4-20 Catherine G. O'Keefe 1841105 31.00 33.00 2.00
4-26 Horace Edgar Spears 1839905 31.00 33.00 2.00
4-26 Bernard Byrne, Jr. 1839918 31.00 33.00 2.00
4-28 James C. Lopitz 1839980 31.00 33.00 2.00
4-28 Gary M. Cooke 1839983 31.00 33.00
 35.00 37.00
*749 5-15 Dannie M. Ladner (1841231 none 33.00)
5-15 Rosemond S. Ward (1841233 Warrant Issued 33.00) 68.00
5-15 David Ray Marie (1841234 31.00 33.00)
5-17 Mabel Duke Parker 1841249 31.00 33.00) 2.00
5-26 James Edward Foster 1841254 35.00 39.00 4.00
5-26 Overdolyn A. Stipe 1841258 35.00 39.00 4.00
5-26 Bryan J. Loupe 1841883 31.00 33.00 2.00
5-30 William F. Cahill 1841292 31.00 33.00 2.00
5-30 Billy G. Still 1841296 31.00 33.00 2.00
5-31 Billy Joe Person 1841604 31.00 33.00 2.00
5-31 Terry L. Dykes 1841608 31.00 33.00 2.00
5-31 Robert J. Sluus 1841546 31.00 33.00 2.00
5-31 Robert J. Spooner 1841547 31.00 33.00 2.00
5-31 Alfred Young, Jr. 1841548 31.00 33.00 2.00
5-31 Kevin Provost 1841624 31.00 33.00 2.00
6-1 Thomas L. Nipper 1841643 31.00 33.00 2.00
6-1 Melvin J. Alexander 1841652 31.00 33.00 2.00
6-2 Douglas McCullen 1841721 31.00 33.00 2.00
6-4 Hubert D. Brown 1841352 31.00 33.00 2.00
6-13 Donna Dasilva 1938509 31.00 33.00 2.00
6-14 Lewis R. Sams 1938558 31.00 33.00 2.00
6-15 Jack Malcolm Talley 1938578 31.00 33.00 2.00
6-15 Shirley L. Robinson 1938580 31.00 33.00 2.00
6-22 Charles Guy Volking 1938774 33.00 35.00 2.00
6-28 William J. Matherne, Jr. 1820456 33.00 39.00 6.00
 _______
 Total $214.00
 =======

APPENDIX B

CANON 1

A Judge Should Uphold the Integrity and Independence of the Judiciary
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

CANON 2

A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities
A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

CANON 3

A Judge Should Perform the Duties of His Office Impartially and Diligently
The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:

B. Administrative Responsibilities
(1) A judge should diligently discharge his administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.
(2) A judge should require his staff and court officials subject to his direction and control to observe the standards of fidelity and diligence that apply to him.

*750 (3) A judge should take or initiate appropriate disciplinary measures against a judge or lawyer for unprofessional conduct of which the judge may become aware.
HAWKINS, Justice, specially concurring:
I concur in the result reached by the majority of the Court, but I cannot concur with this majority's benign characterization of Anderson's misconduct regarding his court's treatment of Ligon and Torrence.
Of course, if the entire case against him consisted only of these two instances, I do not believe the Commission would have recommended his removal. Yet the Commission had the responsibility of considering this conduct in connection with his other misconduct, and did so. In my view the Commission was eminently correct in finding Anderson's action regarding Ligon and Torrence was not only conduct prejudicial to the administration of justice that brings the judicial office into disrepute, but willful misconduct also. This Court's inability to so construe his conduct astounds me.
The Commission on Judicial Performance is composed of three trial judges of courts of record in this state, a justice court judge, two laymen, and a practicing attorney. With but one dissent, this body of distinguished Mississippians found Anderson's conduct (as to Ligon and Torrence) to be not only conduct prejudicial to the administration of justice that brings the judicial office into disrepute, but willful misconduct as well. Yet this Court with a dismaying naivete does not see anything particularly wrong with this conduct.
Prefatory to discussing these two cases, I believe some supplement to the background of Section 177A of the Mississippi Constitution to that set forth in the majority opinion is in order. This case involves a novel procedure for this Court, and clear guidelines need to be staked out.
Under the provisions of Section 177A all judicial officers, exclusive of members of this Court, are subject to removal or having lesser sanctions imposed against them by this Court on the recommendation of the Commission. Also, members of the Mississippi Supreme Court are subject to removal or lesser sanctions by a tribunal of seven trial court judges upon recommendation of the Commission.[1]
It can thus be observed no judicial officer of this State, including any member of this Court, is immune from having his or her official conduct investigated by the Commission, and appropriate action taken by an impartial tribunal. This should certainly be a salutary development in the administration of justice for our people.[2]

*751 THE TORRENCE AND LIGON CASES
Keith J. Torrence, a Jackson resident, while on his honeymoon, was stopped on June 30, 1979, by Officer Silkwood on Interstate 10 in Hancock County. Both Torrence and Silkwood got out of their vehicles, Torrence handed Silkwood his driver's license and was told he was speeding. When Torrence told Silkwood he was on his honeymoon, Silkwood gave him a verbal warning and returned his license, but did not give him any ticket.
James G. Ligon, a resident of Grenada, was also stopped by Silkwood on Interstate 10 on July 22, 1979. Silkwood began writing Ligon a ticket but stopped, and instead warned Ligon to take it easy and slow down. Ligon also left without Silkwood giving him the ticket.
Silkwood did not testify at the hearing, and according to Anderson, Silkwood presented him with an original and a copy of the tickets made out against both individuals. The original of the ticket was supposed to have been delivered to the violator when he was stopped for the offense, and Anderson knew that in both cases tickets had not been delivered either to Torrence or Ligon.
Nevertheless, he found them both guilty of speeding and suspended the sentences. An entry to this effect was made on his docket and on both tickets (including the copies forwarded to the Department of Public Safety). Torrence was found guilty on July 16, 1979; Ligon was found guilty on September 10, 1979. Also, on his claim to the chancery clerk he noted both had been found guilty with suspended sentences, and requested payments of $10.00 costs in both cases.
In January, 1980, Ligon was astonished to receive a notice from the Department of Public Safety that his driver's license had been suspended and that a warrant had been issued for his arrest for failure to appear in court. He immediately called the Department, and learned that the notice was issued because of his failure to appear before Anderson in response to a ticket that Officer Silkwood had turned in.
Torrence learned of the proceedings before Anderson when questioned by a newspaper reporter about it.
Anderson's only explanation of his conduct as to Torrence and Ligon is set forth in his answer to request for admissions. He answered therein that neither Torrence nor Ligon appeared before him, that he had found them both guilty and had suspended their sentences in connection with the tickets. The following request for admission was also addressed to him:
5. That you never gave either Mr. Torrence or Mr. Ligon notice of any proceeding in connection with said tickets prior to said guilty finding, or gave them any opportunity to appear before you at a definite time and place.
He replied as follows:
5. True, Silkwood requested the tickets be suspended, that the defendants had pleaded guilty and were on a emergency run. Silkwood told me that after he gave them the tickets, and understanding their problems, he then took the tickets back, after they pleaded for help. He then told them he would recommend to the Judge that the tickets be suspended. He then told them, if they didn't hear anything from the Judge within a few days, the ticket would be suspended. This is what Silkwood told me.
* * *
I think the Commission's fairness was demonstrated in that even though other charges were brought against Anderson, the Commission found that Anderson's knowing participation in these alleged irregularities was not established by clear and convincing evidence.[3]
* * *

*752 OFFICIAL MISCONDUCT
This case involves two types of official conduct condemned by Section 177A:
(b) willful misconduct in office, and
(e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
Language this plain defies attempts to make its meaning clearer. Nevertheless, courts in other jurisdictions with constitutional provisions similar to our own Section 177A have endeavored to do so. The majority opinion gives samples of such efforts.
Courts, after all, are human institutions. The imperfections of mankind unfortunately assure so many varied types of perversion of the true and proper function of all courts, that it is impossible to encompass them in one single concrete definition. They have existed in myriad variety and will continue until the impurities of the human heart have been leached out.[4]
Fortunately (if not miraculously), balanced against these ills are fundamental concepts of fair play, justice, and certitude, which have been ingrained in most civilized nations through the Holy Bible, other religious teachings, and their evolving laws over the centuries.
Therefore, while we may have difficulty making in the abstract any clearer expression of "willful misconduct of office," or "conduct prejudicial to the administration of justice that brings the judicial office into disrepute," than the words themselves, to point out and identify an offender, it probably is unnecessary. We can generally recognize examples of such conduct when it is displayed before us.
We can admire and commend the helpful definitions of our sister states as they have grappled to give further meaning to the language contained in Section 177A, yet the infinite variables in human character and conduct caution us to ever bear in mind the ultimate determination of necessity must depend on the facts of each case.

LAW AS TO THE TORRENCE AND LIGON CASES
Article 3, Section 14 of our Mississippi Constitution reads:
No person shall be deprived of life, liberty or property except by due process of law.
Article 3, Section 26 of our Mississippi Constitution provides:
In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, to demand the nature and cause of the accusation, to be confronted by the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in all prosecutions by indictment or information, a speedy and public trial by an impartial jury of the county where the offense was committed... .
These two constitutional provisions embrace fundamental principles of fairness which have prevailed in all court systems in this country and Great Britain for centuries. Any high school civics class student should be aware no person can lawfully be deprived of property or liberty without a trial, and a fair and adequate notice beforehand of the time and place for such trial so that he can know the nature of the case against him, and have reasonable opportunity to prepare his defense.
To find Torrence and Ligon guilty and make a public entry of such findings on his *753 official docket, when neither of them had any notice or knowledge of the proceedings against them, in my view was as gross a violation of Sections 14 and 26 of our Mississippi Constitution as can be envisioned.
It is true they were minor cases, and also true their fines (the amount not being stated) were "suspended." Nevertheless, this Court can observe two possible invidious consequences: (1) notice of the conviction is forwarded to the Mississippi Highway Safety Patrol for its records, possibly precipitating the suspension or revocation of one's license; and (2) the insurance carrier could choose to place such individual in a higher risk category. Indeed, as in Ligon's case, he received notice from the Highway Safety Patrol that his license had been suspended and that a warrant had been issued for nonpayment of his fine.
While it is true justice court judges for the most part are not lawyers, and are not bound by the same formality as higher courts, the constitutional rights of any citizen are not lessened in any degree simply because his case happens to be in justice court. Justice court judges must be constantly aware that constitutional rights are not to be gauged by the court in which a litigant finds himself, and I am convinced the overwhelming majority of justice court judges recognize this responsibility. Justice court judges attend seminars, are provided ample information and are afforded virtually unlimited sources of counsel and advice to enable them in simple cases to give fair and impartial trials.
I can place no credence in any claim of ignorance as an excuse for Anderson's handling of these two cases.
When Anderson took the witness stand in his own defense, he produced for the first time criminal affidavits signed by Silkwood before him against Torrence and Ligon, each charging the defendant with speeding.[5] The filing of these affidavits before him made it mandatory under Miss. Code Ann. § 99-33-3 (Supp. 1981) that he issue a warrant for the arrest of the defendant and try and dispose of each case according to law. The conviction of these two defendants without any hearing after criminal affidavits had been lodged against each made Anderson's violation of their rights even more egregious.
If such handling had resulted in no financial benefit to him, Anderson's conduct would in my opinion have been conduct prejudicial to the administration of justice which brings the judicial office into disrepute as condemned by Section 177A. To me such conclusion is inescapable from the clear words of the Constitution.
Anderson handled the two citations in such a way, however, to enrich his own pocket at the expense of the taxpayers of Hancock County. He made claim upon and collected $10.00 from the county in each case. Ligon and Torrence were injured, the taxpayers of Hancock County were injured in having to pay $20.00 for nothing, and the only person to benefit was Anderson. He pocketed $20.00 from these transactions. This constituted bad faith on his part and in my opinion constituted willful misconduct in office as condemned by Section 177A.
In conclusion, I am compelled to reiterate what I stated in the beginning, it is simply incomprehensible to me that Anderson's conduct cannot be seen by the majority as prejudicial to the administration of justice, and the kind of conduct that brings our judicial system into disrepute (If I am mistaken, then it follows his conduct did not harm the administration of justice).
Also, when taken in conjunction with his numerous petty embezzlements, the conclusion is inescapable, at least to me, that this action was in bad faith in an effort to collect $20.00 from Hancock County.
In my view, the majority of this Court has simply ignored the plain and unambiguous wording of our Constitution.
It is a matter of common knowledge that the justice court system is the subject of *754 great criticism, and at times has been considered by many citizens of this country a farce. The overwhelming majority of the justice court judges in this state are today making every effort to improve the administration of justice in their courts, and strictly adhere to the law. This Court renders no service to the justice court system and to the overwhelming majority of competent justice court judges, when it takes a paternalistic view of the system, and lightly criticizes the conduct of Anderson. It is this very sort of conduct which has brought so much trouble to the justice court system, and which the justice court judges themselves are attempting to weed out.
Furthermore, to take lightly what six members of the Commission on Judicial Performance took very seriously will no doubt make these members ponder whether their efforts are worthwhile.
In accepting the findings of the Commission as to Anderson's embezzlement, this Court has only recognized the obvious.
The other misconduct of Anderson is somewhat more subtle and insidious, but that does not mean practices of this sort do not exist, or that they cannot permeate the justice court system without the strongest condemnation from this Court, and consequent sanctions where needed.
The majority chooses to view Anderson's treatment of the Ligon and Torrence cases lightly; I cannot.
BROOM and DARDEN, JJ., join in this specially concurring opinion.
NOTES
[1] As to a member of the Mississippi Supreme Court, the fourth paragraph of this section states:

A recommendation of the commission on judicial performance for the censure, removal or retirement of a justice of the supreme court shall be determined by a tribunal of seven (7) judges selected by lot from a list consisting of all the circuit and chancery judges at a public drawing by the secretary of state. The vote of the tribunal to censure, remove or retire a justice of the supreme court shall be by secret ballot and only upon two-thirds (2/3) vote of the tribunal.
[2] Beginning with California in 1960, at least 33 states have authorized judicial performance commission, most of them by constitutional amendment, as we have in Mississippi. This is a recognition by the bench, the bar and the public of the vital importance to our society of competent and impartially administered courts. It is to their credit that those most actively concerned with the formation of commissions and enforceable standards of performance in office have been the judicial branches themselves of the various states.

The history of judicial discipline, guidelines for procedure under judicial performance commissions, and responsibility of the bench and bar, are set forth in Judicial Discipline and Disability Symposium, 54 Chicago-Kent Law Rev. 1 (1977), and begins with the following explanation:
Justice demands that lawyers, litigants and the public have confidence and trust in the judges who administer justice. As a consequence, there has been a concern throughout history with the honesty, courage and independence of the judiciary. This concern has been reflected in the universal requirement that judges be selected through methods that will assure they have those indispensable qualities. Judges are only human, however, and the methods of selection do not always guarantee their continued good behavior. To ensure the impartial administration of justice, fair and effective means of disciplining unfit judges are essential.
[3] There were a number of alleged "fictitious" tickets, a suspicion aroused by non-existent addresses, numbered in certain patterns, and the times of birth of a number of supposed "recipients" of tickets. Of the tickets issued in a three day period a striking number were born in November, and of these, nine had birthdays on Armistice Day.
[4] A sampling: Judicial commissions and courts in other jurisdictions have imposed sanctions against judges for: coarse, crude, salacious humor in conducting duties; ridiculing, as well as boorish behavior towards witnesses, or attorneys, usually in an attempt to intimidate; private or ex parte disposition of criminal cases contrary to wish of prosecution; suggestions to arresting or prosecuting officers that offenders (usually friends of judge) be given lighter sentence than facts of case justified; use of office for personal financial gain in business transactions; vindictive rulings and opinions; threats to counsel because of personal animosity of judge against attorney; perjury; embezzlement; lascivious habits off the bench.
[5] Prior to the hearing Anderson was directed to produce official records, which would have included these two affidavits. They were never produced, however, until he took the stand in presenting his defense.