CARLSON, Presiding Justice,
for the Court:
¶ 1. The Mississippi Commission on Judicial Performance (Commission) filed a Formal Complaint against Rickey W. Thompson, Justice Court Judge, District Four, Lee County, Mississippi. The multi-count complaint charged Judge Thompson with numerous instances of judicial misconduct, causing such alleged conduct to be actionable under Article 6, Section 177A of the Mississippi Constitution of 1890. Ultimately, the Commission and Judge Thompson submitted to this Court a joint motion for approval of a recommendation that Judge Thompson be publicly reprimanded, suspended from office for a period of thirty (30) days without pay, fined the sum of $2,000 and assessed costs in the amount of $100. For the reasons discussed below, we adopt the joint recommendation of the Commission and Judge Thompson.
ANALYSIS

A. Facts and Proceedings Before the Commission and General Discussion of the Charges of Judicial Misconduct

¶ 2. On August 5, 2009, the Commission filed a multicount formal complaint concerning Judge Thompson, a justice court judge in Lee County, alleging willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute. Twenty-six counts were contained in the formal complaint (twenty-five counts actually charged Judge Thompson with judicial misconduct); however, nine counts were redacted in the record filed with us, and eleven counts were consolidated. These eleven consolidated counts charge that Judge Thompson improperly disposed of cases involving separate charges of individuals operating a motor vehicle with no proof of liability insurance. Judge Thompson filed his answer on August 31, 2009, essentially denying the allegations of the complaint. Thereafter, on March 11, 2011, an Agreed Statement of Facts and Proposed Recommendation (Agreement) was submitted and filed by the parties regarding the allegations contained in this complaint. This Agreement addressed the six remaining counts.
¶ 3. This Court makes the “final determination of the appropriate action to be taken in each case” coming before it from the Mississippi Commission on Judicial Performance, “conduct[ing] an independent inquiry of the record” and “accord[ing] careful consideration [of] the findings of fact and recommendations of the Commission, or its committee, which has had the opportunity to observe the demeanor of the witnesses.” Miss. Comm’n on Judicial Performance v. Boone, 60 So.3d 172, 176 (Miss.2011) (quoting In re Removal of Lloyd W. Anderson, Justice Court Judge, 412 So.2d 743, 746 (Miss.1982)).
Count One
¶ 4. According to the agreed facts:
In the fall of 2006, Florida Rogers owned a horse, a pregnant mare, that disappeared from a pasture where he had placed the horse to graze. At that time, Rogers searched for the horse, but was unsuccessful in locating her. Thereafter, on or about May 18, 2008, Rogers spotted the mare and a colt grazing in a pasture in Lee County, Mississippi.
Rogers went to the Justice Court of Lee County, Mississippi to file a criminal affidavit against the person owning the pasture where the horses were located, but Respondent refused to allow him to do so, advising Rogers that the case was a civil case.
*89 Although Rogers requested that the Lee County Sheriffs Department investigate the matter involving the horses, on or about July 24, 2008, Rogers received a letter from the Sheriff of Lee County, Mississippi advising him that Respondent instructed his office to take no action, as the matter was a civil matter. Rogers ultimately filed a civil replevin case in the County Court of Lee County, Mississippi and was awarded possession of the mare, the paternity of the colt being at issue.
¶ 5. Under these agreed facts, Judge Thompson involved himself in a case that was not before him. It is true that Judge Thompson may have believed that the facts amounted to a civil rather than a criminal matter, and this Court does not sanction judges for mistakes of law. Miss. Comm’n on Judicial Performance v. Martin, 921 So.2d 1258, 1268 (Miss.2005). In the Martin case, this Court dismissed the proposed sanctions of the Commission where Judge Martin erred in denying bail on two separate occasions. Id. at 1264. In that case, this Court held that:
a judge may ... through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute. Miss. Comm’n on Judicial Performance v. Russell, 691 So.2d 929, 937 (Miss.1997). This Court can generally recognize examples of willful misconduct when they are presented for review. In re Anderson, 412 So.2d 743, 752 (Miss.1982) (Hawkins, J. specially concurring). The misconduct complained of need not be intentional or notorious; rather negligence, ignorance, and incompetence suffice as grounds for behavior to be classified as prejudicial to the administration of justice which brings the judicial office into disrepute and thus worthy of sanctions. In re Quick, 553 So.2d 522, 527 (Miss.1989).
Id. at 1264 (citing Miss. Comm’n on Judicial Performance v. Carr, 786 So.2d 1055, 1058-59 (Miss.2001)).
¶ 6. Contrary to the facts in Martin, Judge Thompson’s communication with the sheriffs office crossed the line into involving himself in a criminal investigation at a time when there was no case pending before him concerning the matter.
Count Two
¶ 7. According to the agreed facts:
On or about December 1, 2008, a local attorney, Frank B. Liebling, went to the Lee County Justice Court office to file a complaint against a client who ha[d] stopped payment on a check issued to Liebling for attorney fees.
Liebling did not file the complaint and no action was pending before the court. Instead, Liebling took the proposed complaint and engaged in an ex parte conversation with Respondent. As a result of the meeting, Respondent signed an order nullifying the stop order on the check in question and ordered the bank to cash the check immediately.
The bank officers, being suspicious of the order, contacted the attorneys for the bank and the next day after a conference with the bank attorneys and Liebling, Respondent rescinded the nullification order due to improper process.
¶ 8. Judge Thompson signed an order where there was no case pending and engaged in ex parte discussions in the facts of this count.
Count Three
¶ 9. According to the agreed facts:
On or about June 21, 2008, Holley Kris-tian Galloway, a minor, was arrested and issued a citation for driving under the influence of alcohol, with a B.A.C. of .09. *90 The case, State of Mississippi v. Holley K. Galloway, Docket 295, Page 430, was randomly assigned to Lee County Justice Court Judge John Sheffield and was set for trial on December 4, 2008. When the officer came into the clerk’s office to inspect the file prior to court, it was discovered that Respondent had previously non-adjudicated the minor at the request of Galloway and her father. Respondent non-adjudicated the minor in violation of Mississippi Code Annotated § 63-11-30(3).
¶ 10. The facts provided indicate an ex parte communication among Judge Thompson, Galloway, and Galloway’s father. Also, no notice was given to prosecuting authorities, and Judge Thompson unquestionably interfered in a case that was assigned to Judge Sheffield.
¶ 11. The case is distinguishable from this Court’s recent opinions in Mississippi Commission on Judicial Performance v. McGee, 71 So.3d 578, 589 (Miss.2011); and Mississippi Commission on Judicial Performance v. Little, 72 So.3d 501 (Miss.2011) In those cases, justice court judges admitted to remanding, nonadjudicating, or retiring to the files several DUI charges at the request of a county prosecutor. McGee, 71 So.3d at 582-83; Little, 72 So.3d at 502. This Court dismissed those counts with prejudice, holding that, even if the judges had improperly disposed of the DUI charges, that was only a mistake of law and not sanctionable. McGee, 71 So.3d at 584-85; Little, 72 So.3d at 504. However, unlike the DUI charges in McGee and Little, the agreed facts in Judge Thompson’s case describe other sanctionable actions: an ex parte communication with the parties, no notice to prosecuting authorities, and interfering in a case assigned to another judge.
Count Four
¶ 12. According to the agreed facts:
Robert Gary Orozen, Jr. was arrested and charged with the felonies of forgery, possession of a counterfeit check and possession of false identification in October, 2008 in State of Mississippi v. Robert Gary Orozen, Jr., Docket 571, Pages 253-254.
On or about October 28, 2008, Lee County Justice Court Judge Sadie Holland presided at the initial appearance and set bond at $250,000.00. On January 29, 2009, counsel for the defendant filed a Motion to Reduce Bond and for Preliminary Hearing. On April 7, 2009, Judge Holland denied the defendant’s request for bond reduction and a preliminary hearing was scheduled for May 27, 2009. That same date, counsel for defendant approached Respondent regarding the request for bond reduction.
The next day, April 8, 2009, Respondent reduced the defendant’s bond to $5,000.00 and he was released and transferred to the custody of another law enforcement agency.
¶ 13. The misconduct in this count is apparent. This Court consistently has sanctioned judges for interfering with the orders of another judge. See Miss. Comm’n on Judicial Performance v. Britton, 936 So.2d 898, 903-04 (Miss.2006); Miss. Comm’n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004), overruled in part on other grounds by Miss. Comm’n on Judicial Performance v. Boone, 60 So.3d 172 (Miss.2011); In re Bailey, 541 So.2d 1036, 1039 (Miss.1989).
Count Five
¶ 14. According to the agreed facts:
In 2009, between January and May, the defendants were issued citations for no proof of liability insurance in the following cases: State of Mississippi v. Andrew K. Watts, Docket 307, Page 231; *91 State of Mississippi v. Ruthie E. Gunn, Docket 306, Page 236; State of Mississsippi v. Donald E. Quarles, Docket 309, Page 325; State of Mississippi v. Patrick D. Westmoreland, Docket 309, Page 275; State of Mississippi v. Carol L. Berryman, Docket 309, Page 177; State of Mississippi v. James R. Ivy, Docket 314, Page 8; State of Mississippi v. Patrick B. Covington, Docket 314, Page 49; State of Mississippi v. Mary Elizabeth Howard, Docket 309, Page 150; State of Mississippi v. Nathan D. Scroggins, Docket 313, Page 48; State of Mississippi v. Tonya M. Roper, Docket 314, Page 212; and State of Mississippi v. Erin B. Richardson, Docket 314, Page 147.
At some point prior to their court dates, each defendant went to the Lee County Justice Court and supplied proof of insurance obtained after the fact and Respondent dismissed the citation in violation of Mississippi Code Annotated § 63-15^4(5). [That statute provides that if the liability insurance was not in effect at the time the citation was issued, the cases should not have been dismissed.]
¶ 15. The agreed facts tell us that the defendants “supplied proof of insurance obtained after the fact.” The Commission should have used clearer language as to whether it was the proof of insurance, or the insurance itself, that was obtained after the fact. However, in context, it is clear that the Commission is not discussing proof obtained after the fact, where the insurance was already in effect, but rather proof of insurance which itself was obtained after the fact.
¶ 16. The question is thus whether this repeated conduct constitutes “negligence, ignorance, and incompetence [which] suffice as grounds for behavior to be classified as prejudicial to the administration of justice which brings the judicial office into disrepute and thus worthy of sanctions” under Martin, 921 So.2d at 1264, or merely a mistake of law. Eleven instances alleged in a four-month period rise above the level of a mere mistake and constitute behavior prejudicial to the administration of justice and worthy of sanctions.
Count Six
¶ 17. According to the agreed facts:
On or about June 30, 2009, officer Tim Erickson of the Lee County Sheriffs Department received a call from Respondent on his personal cellular telephone. Respondent requested that the officer go to a certain location and assist a male involved in a divorce, in obtaining personal belongings from the marital home. The officer was advised by his dispatcher that any order concerning the matter must come from the Chancery Court judge.
Nearly simultaneously, the female involved in the divorce called the Sheriffs Department to report the male removing items from the marital domicile. When the officers arrived, the male reported that Respondent had told him he could get anything that belonged to him. The only issue pending before Respondent in the justice court was a family disturbance matter involving the parties.
¶ 18. The facts do not clearly state that a matter was actually pending in the chancery court, but it is implied — the couple is described as “involved in a divorce.” Judge Thompson improperly involved himself in a domestic civil matter. The facts further indicate that there was an improper ex parte communication with the male, and that Judge Thompson improperly attempted to aid the litigant by telephoning the officer.
¶ 19. The Commission discusses the Respondent’s violations in the agreed facts:
*92 The Respondent acknowledges that Canon 1 demands that a judge should establish, maintain and enforce high standards of conduct and personally observe those standards so that the integrity and independence of the judiciary will be preserved. Respondent also recognizes that Canon 2A of the Code of Judicial Conduct requires judges to respect and comply with the law and act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. Respondent likewise understands that Canon 3B(2) requires judges to be faithful to the law and to maintain professional competence in it. Respondent also acknowledges that Canon 3B(7) prohibits judges from engaging in ex parte communications concerning a pending or impending matter.
¶ 20. This Court repeatedly has held that a judge should not engage in ex parte communication, most notably in Boone, 60 So.3d at 182. Judge Thompson did so under the facts alleged in Counts One, Two, Three, Four and Six.
¶ 21. Interfering with the orders of another judge has been found to constitute willful misconduct which brings the judicial office into disrepute. See Miss. Comm’n on Judicial Performance v. Britton, 936 So.2d 898, 903 (Miss.2006). Judge Thompson clearly did so in the facts of Count Four.
¶ 22. In Mississippi Commission on Judicial Performance v. Patton, 57 So.3d 626, 634 (Miss.2011), this Court found that Judge Patton had ignored the Code of Judicial Conduct and deprived citizens of their due process rights when, following ex parte contact, he signed orders in cases involving contempt without the parties being properly notified of the charge or a right to a hearing. The Court imposed a public reprimand, suspension of thirty days without pay, and costs. See also Miss. Comm’n on Judicial Performance v. Vess, 10 So.3d 486, 488 (Miss.2009) (public reprimand, fine of $2,000 and costs where judge engaged in ex parte communication and failed to provide notice to litigants); and Miss. Comm’n on Judicial Performance v. Hartzog, 646 So.2d 1319, 1322 (Miss.1994) (public reprimand where judge signed an order requiring that a prisoner be returned to the county when no case was pending before his court). Here, in Count Two, Judge Thompson signed an order presented to him by an attorney when no case was pending before the Court.
¶ 23. In Mississippi Commission on Judicial Performance v. Carr, 990 So.2d 763, 765 (Miss.2008), overruled in part on other grounds by Boone, 60 So.3d 172, Judge Carr used his position as a justice court judge to threaten a citizen with arrest at a time when no criminal charges were pending against her. Id. at 765. Judge Carr received a public reprimand, a sixty-day suspension without pay, a $2,000 fine and costs. Id. at 771. In the instant case, Judge Thompson interjected himself into two separate civil matters at a time when no case was pending before him by instructing the sheriffs department to cease investigation of a matter in Count One, and by advising a divorce litigant in Count Six.
¶ 24. Regarding Count Five, in numerous instances, either intentionally or through ignorance, a judge has failed to follow statutory dictates, thereby resulting in disciplinary sanctions. See Miss. Comm’n on Judicial Performance v. T.T., 922 So.2d 781, 785 (Miss.2006) (“Judges are required to research, read, know and apply the pertinent statutes and ease law.”); Miss. Comm’n on Judicial Performance v. Neal, 774 So.2d 414, 416-17 (Miss.2000) (respondent’s argument that *93 he was unaware of a violation of the Code when imposing a fíne in excess of statutory authority was not accepted by this Court); Miss. Comm’n on Judicial Performance v. Sanders, 749 So.2d 1062, 1070 (Miss.1999) (“Disregard of state law, whether done intentionally or mistakenly, most certainly brings the integrity and independence of the office into question.”); Miss. Comm’n on Judicial Performance v. Jones, 735 So.2d 385, 389 (Miss.1999) (judge’s reduction of DUI violations to disorderly conduct violated law, the statutes not allowing for such reductions); and Miss. Comm’n on Judicial Performance v. Chinn, 611 So.2d 849, 853 (Miss.1992) (Justice court judges are “knowledgeable in the area in which they administer justice.”) Judge Thompson failed to follow the law in dismissing multiple cases in violation of Section 63-15-4(5), where defendants were issued citations for having no insurance and later acquired insurance. We consider this to be sanctionable conduct, considerably more severe than a mere mistake of law.

B. Discussion of Sanctions

¶ 25. The Commission recommends sanctions of a public reprimand, suspension from office for a thirty-day period, a fine of $2,000, and costs in the amount of $100. Assuming sanctions are warranted, our analysis considers the six factors established by Gibson, 883 So.2d at 1158.

1. The length and character of the judge’s public service

¶ 26. The respondent is in his second term as justice court judge and has qualified for re-election. The record is silent as to the character of his service.

2. Whether there is any prior caselaw on point.

¶ 27. In addition to the cases discussed above, several other cases are relevant.
¶ 28. In Mississippi Commission on Judicial Performance v. McPhail, 874 So.2d 441, 442-43 (Miss.2004), a judge mis-dated a judgment resulting in a litigant losing his right to appeal, entered a judgment based on ex parte contact, set aside a judgment after engaging in ex parte communications, gave legal advice and injected himself ex parte into a pending domestic-abuse case before his court, and failed to render a decision in a case after taking it under advisement. This Court ordered a public reprimand, a suspension for thirty days without pay, and costs of the proceeding. Id. at 445.
¶ 29. In Mississippi Commission on Judicial Performance v. Cowart, 936 So.2d 343, 345-48 (Miss.2006), the judge committed impermissible ex parte contacts, presided over a case after acknowledging a conflict, assisted others in avoiding prosecution, requested that an officer dismiss a ticket, and improperly handled fine money. This Court found that the above conduct warranted a public reprimand, a thirty-day suspension without pay and the payment of costs. Id. at 351.
¶ 30. In Mississippi Commission on Judicial Performance v. Roberts, 952 So.2d 934, 935-37 (Miss.2007), the judge committed multiple violations involving improper arrests, issuing arrest warrants without legal justification, threatening defendants and lawyers and otherwise improperly using the power of his office. This Court ordered a public reprimand, suspension from office without pay for a period of thirty days, a fine of $1,500 and payment of costs. Id. at 943.
¶ 31. In Mississippi Commission on Judicial Performance v. Bradford, 18 So.3d 251, 253 (Miss.2009), the judge engaged in ex parte communications, violated Rule 2.06 of the Uniform Rules of Proce *94 dure for Justice Court, attempted to get traffic citations dismissed in cases pending before another judge, dismissed criminal cases without properly notifying the prosecutor, improperly dismissed DUI cases, and ordered the issuance of contempt warrants without proper notice of hearing. This Court ordered a public reprimand, suspension from office without pay for thirty days, and assessed costs. Id. at 258.

3. The magnitude of the offense and the harm suffered

¶ 32. By engaging in the aforementioned conduct, Judge Thompson failed to avoid impropriety, caused his impartiality to be questioned, and jeopardized the integrity and independence of the judiciary, thereby eroding public confidence in him as a judicial officer and in our state’s judiciary as a whole.

4. Whether the misconduct is an isolated incident or evidences a pattern of conduct.

¶ 33. In 2006, the Commission held a hearing on a formal complaint against Judge Thompson, and it found that he had engaged in ex parte communications with a litigant, attempted to mediate the dispute and subsequently issued a criminal warrant in a civil case, resulting in a private admonishment. Thereafter, this Court ordered a public reprimand and costs in a case in which Judge Thompson had interjected himself into a case involving relatives in an attempt to prevent a warrant being issued and served. Miss. Comm’n on Judicial Performance v. Thompson, 972 So.2d 582, 590 (Miss.2008), overruled in part on other grounds by Boone, 60 So.3d 172 (Miss.2011).

5. Whether moral turpitude was involved.

¶ 34. Moral turpitude includes, but is not limited to, actions which involve interference with the administration of justice, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute. Gibson, 883 So.2d at 1158. In Mississippi Commission on Judicial Performance v. Sanford, 941 So.2d 209, 217 (Miss.2006), this Court expanded the definition of moral turpitude to include a violation of “some of the basic tenets of daily living in a civil society, such as living by standards of fundamental decency and honesty by not abusing the judicial process, and by revering the law and the judicial system, and upholding the dignity and respect of the judiciary through appropriate conduct and behavior toward others.” Id. at 217. The totality of Judge Thompson’s actions did impede or interfere with the administration of justice. The Commission asserts that the misconduct rose to the level of moral turpitude, and we agree.

6.The presence or absence of mitigating factors

¶ 35. Mitigating factors are present in light of the fact that Judge Thompson has agreed that his actions were improper and has entered into an Agreed Statement with the Commission without the requirement of a hearing. The Commission considered that Judge Thompson was the sole misdemeanor drug-court judge in Lee County and that a period of suspension longer than thirty days would cause a significant disruption of the function of the drug court; thus, a $2,000 fine was recommended in lieu of additional suspension time.
¶ 36. In addition, a petition in support of Judge Thompson has been submitted to this Court, signed by numerous citizens of Lee County.

C. Discussion of Lack of Clarity and Specificity

¶ 37. The Commission’s brief is unnecessarily vague in its description of the *95 various counts of misconduct. Likewise, the Agreed Statement of Facts no doubt could have been set out with more specificity. However, in today’s case, it has survived our scrutiny and independent inquiry into the totality of the record before us. Furthermore, we recommend that the Commission be more specific as to the violations alleged in each individual count in the future.
¶ 38. In the context of the instant case, we find that the Commission’s allegations are clear and convincing in establishing a pattern of judicial misconduct by Judge Thompson. However, we note that in other cases, such a lack of clarity and specificity might prove fatal, requiring a dismissal of the case, or, at the very least, remanding the case for further development of the facts. We recommend that in the future, the Commission err on the side of caution and include all relevant information in each count, including the specific canons which are alleged to have been violated.
CONCLUSION
¶ 39. Having considered the record before us and having applied the Gibson factors consistent with our caselaw, we find that the Agreed Statement of Facts and Proposed Recommendation jointly submitted by the Commission and Judge Thompson should be adopted in toto.
¶ 40. Judge Thompson has engaged in six counts of judicial misconduct prejudicial to the administration of justice which brought the judicial office into disrepute. We thus order that Judge Thompson be publicly reprimanded, suspended from office for thirty days, fined $2,000, and assessed costs of the proceeding in the amount of $100. The public reprimand shall be read in open court by the presiding judge of the Circuit Court of Lee County on the first day of the next term of that Court in which a jury venire is present after the issuance of this Court’s mandate in this case, with Judge Thompson present.
¶ 41. The Clerk of this Court shall send copies of this opinion and the mandate of this Court to the Chancery Clerk of Lee County, and to the Circuit Clerk of Lee County, as well as to the Lee County Justice Court Clerk, the County Administrator of Lee County, and the Lee County Board of Supervisors.
¶ 42. LEE COUNTY JUSTICE COURT JUDGE RICKEY W. THOMPSON SHALL BE SUSPENDED FROM OFFICE FOR A PERIOD OF THIRTY (30) DAYS WITHOUT PAY, EFFECTIVE ON THE DATE OF ISSUANCE OF THIS COURT’S MANDATE, PUBLICLY REPRIMANDED, FINED $2,000 AND ASSESSED COSTS OF $100. THE PUBLIC REPRIMAND SHALL BE READ IN OPEN COURT BY THE PRESIDING JUDGE OF THE LEE COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT IN WHICH A JURY VE-NIRE IS PRESENT AFTER THE ISSUANCE OF THIS COURT’S MANDATE, WITH JUDGE THOMPSON IN ATTENDANCE.
WALLER, C.J., DICKINSON, P.J., RANDOLPH, LAMAR, PIERCE AND KING, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION. CHANDLER, J., NOT PARTICIPATING.