RANDOLPH, Justice,
for the Court.
STATEMENT OF THE CASE
¶ 1. On January 12, 2004, the Mississippi Commission on Judicial Performance (“Commission”) filed a formal complaint charging Judy Case Martin (“Judge Martin”), Justice Court Judge, Lincoln County, Mississippi, with judicial misconduct in office. The Commission alleged that her conduct in the Schifano matter violated Article 3, Section 29 of the Mississippi Constitution of 1890[1] and Canons 1, 2A, *1261 3B(1), 3B(2), 3B(4), 3B(7), and 3B(8) of the Code of Judicial Conduct of Mississippi and was therefore actionable pursuant to subsections (b) and (e) of Article 6, Section 177A of the Mississippi Constitution.[2]
¶ 2. On September 9, 2004, three members of the Commission held a hearing on these charges and filed their Findings of Fact, Conclusions of Law and Recommendations on December 15, 2004. On December 28, 2004, Judge Martin filed her Objection to Committee Findings of Fact, Conclusions of Law and Recommendations and her Motion for Additional Time to Supplement Response and Objections.
¶ 3. On February 9, 2005, Judge Martin filed an amendment to her Objections.
¶ 4. On March 10, 2005, the full Commission rendered and adopted its Findings of Fact, Conclusions of Law and Recommendations.
COUNT ONE
¶ 5. The first charge of judicial misconduct against Judge Martin involved Sam Schifano (Schifano), who was arrested on a series of charges beginning on or about May 28, 2003. The Commission concluded that Judge Martin, using the power of her office as Justice Court Judge, by having Schifano arrested, incarcerated and denied the right of bail on two separate occasions, violated Article 3, Section 29 of the Mississippi Constitution 1890, which gives the authority to deny bail only to County and Circuit Judges, and therefore she violated Canons 1, 2A, 3B(1), 3B(2), 3B(4), 3B(7), and 3B(8) of the Code of Judicial Conduct of Mississippi.
*1262 ¶ 6. This Court finds the Commission’s conclusion of law that “Judge Martin in using the power of her office as Justice Court Judge in having Mr. Schifano arrested, incarcerated and to deny him bond on two separate occasions violated Article 3, Section 29 of the Mississippi Constitution” is overly broad. Article 3, Section 29 addresses solely the issue of bail, but does not address wrongful arrest or unjust incarceration. Therefore, this Court will focus on whether Judge Martin’s denial of bail to Schifano contrary to Article 3, Section 29, violated the aforementioned canons of the Code of Judicial Conduct of Mississippi.
¶ 7. The Commission recommended that Judge Martin be publicly reprimanded, suspended from office without pay for a period of thirty days, and assessed the costs of this proceeding in the amount of $1,925.08 for her willful misconduct and conduct prejudicial to the administration of justice, which brings the judicial office into disrepute.
COUNT TWO
¶ 8. The Commission concluded that there was not clear and convincing evidence that Judge Martin had committed judicial misconduct in the matter of Bridges v. Daly, Docket No. 168, Case No. 115. The Commission recommended this matter be dismissed.
ISSUE FOR DECISION
¶ 9. Judge Martin is only challenging the Commission’s recommendation involving the Schifano matter and argues that the evidence is not clear and convincing that she committed judicial misconduct. Judge Martin contends, however, that if the Court were to impose disciplinary sanctions, then according to judicial precedent, a private reprimand would be more appropriate than a public reprimand.
FACTS
¶ 10. The facts are undisputed. On May 28, 2003, as a result of ongoing domestic disputes, Schifano was arrested on misdemeanor charges of stalking and telephone harassment filed by his estranged wife, Paula Ratcliff. Judge Martin released Schifano on $5,000 bond on the same day, an amount based upon conversations between Judge Martin and law enforcement officers and the Justice Court clerks. On June 5, 2003, Schifano was again arrested based upon affidavits filed by Ratcliff and his mother-in-law alleging stalking and trespassing. Judge Martin initially denied bail on June 5, 2003, and then subsequently set a $5,000 bail on June 10, 2003. Schifano was incarcerated until he was bonded out on June 10, 2003. On July 3, 2003, Schifano was again arrested for telephone harassment based upon his estranged wife’s affidavit. He was immediately released on $2,500 bail. On August 13, 2003, Judge Martin held a hearing on all of the above charges. Schifano was found not guilty on all charges, as all of the witnesses either failed to appear or declined to testify at court.
¶ 11. On August 26, 2003, Schifano was again arrested and incarcerated, charged with telephone harassment on a warrant filed by his estranged wife. Judge Martin initially denied bail to Schifano. Subsequently on September 2, 2003, bail of $1,000 was set, and Schifano was released on the same day. Schifano requested that Judge Martin recuse herself from the case, to which she consented, and thus another judge was assigned the case. Schifano was found guilty of telephone harassment and fined.
¶ 12. Judge Martin testified that she was unfamiliar with Section 29 of the Mississippi Constitution of 1890, as amended, as to the setting of bail and if and when said bail could be denied. She further *1263 testified that she did not try to initiate any contempt proceedings against Schifano for violating any conditions of his bond or conditions of release, nor did she set a bond revocation hearing.
¶ 13. The Commission concluded that Judge Martin in using the power of her office as Justice Court Judge in having Schifano arrested, incarcerated, and denying bail to Schifano on two separate and distinct occasions violated Article 3, Section 29 of the Mississippi Constitution of 1890, as amended, and therefore violated of Canons 1, 2A, 3B(1), 3B(2), 3B(4), 3B(7), and 3B(8) of the Code of Judicial Conduct of Mississippi. The Commission found that this conduct constituted willful misconduct in office and conduct prejudicial to the administration of justice, which brings the judicial office into disrepute pursuant to subsections (b) and (e) of Article 6, Section 177A of the Mississippi Constitution of 1890.
STANDARD OF REVIEW
¶ 14. This Court reviews judicial misconduct proceedings de novo. Miss. Comm’n on Judicial Performance v. Perdue, 853 So.2d 85, 88 (Miss 2003) (citing Miss. Comm’n on Judicial Performance v. Vess, 692 So.2d 80, 83 (Miss.1997)). Great deference is given to the Commission’s findings when those findings are based on clear and convincing evidence. Id. (citing Miss. Comm’n on Judicial Performance v. Lewis, 801 So.2d 704, 707 (Miss.2001); Miss. Comm’n on Judicial Performance v. Bishop, 761 So.2d 195, 198 (Miss.2000)). However, this Court is not bound by the Commission’s findings and must use independent judgment in assessing [the] misconduct [of judges]. Id. (citing In re Collins, 524 So.2d 553, 556 (Miss.1988)). It is within the exclusive province of the Supreme Court to impose sanctions for judicial misconduct. Id. (citing Miss. Comm’n on Judicial Performance v. Fletcher, 686 So.2d 1075, 1078 (Miss.1996); In re Garner, 466 So.2d 884, 885 (Miss.1985)).
ANALYSIS
¶ 15. We believe our judicial system is more just and fair than any legal system which presently exists, or for that matter, which has ever existed in the history of civilization preceding our experiment in democracy. Yet at the same time, the system is not perfect. Judges are human, and as such, do on occasion err. Ultimately, it is this Court’s constitutional duty to separate honest errors of a judge from willful misconduct, wrongful use of power, corruption, dishonesty, or acts of moral turpitude which negatively reflect upon the judicial branch of government.
¶ 16. We agree with the Commission that Judge Martin’s rulings were contrary to Article 3, Section 29 of the Mississippi Constitution. We find that Judge Martin erred in denying bail to Schifano, but this error does not necessarily equate to sanctionable conduct as enunciated by this Court in Miss. Comm’n on Judicial Performance v. Carr, 786 So.2d 1055(Miss.2001). In Carr, this Court established the grounds for sanctionable conduct as follows:
Willful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally or with gross unconcern for conduct and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of office whatever the motive. However, these elements are not necessary to finding bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legit *1264 imate exercise of authority constitutes bad faith... .Willful misconduct in office is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute. Miss. Comm’n on Judicial Performance v. Russell, 691 So.2d 929, 937 (Miss.1997). This Court can generally recognize examples of willful misconduct when they are presented for review. In re Anderson, 412 So.2d 743, 752 (Miss.1982) (Hawkins, J. specially concurring). The misconduct complained of need not be intentional or notorious; rather negligence, ignorance, and incompetence suffice as grounds for behavior to be classified as prejudicial to the administration of justice which brings the judicial office into disrepute and thus worthy of sanctions. In re Quick, 553 So.2d 522, 527 (Miss.1989).
786 So.2d at 1058-59.
¶ 17. While exercising her judicial discretion, Judge Martin committed an error. All judges will err, if they serve long enough. There is no evidence in the record to support the clear and convincing threshold that her errors were committed “intentionally, with gross unconcern, or generally in bad faith.” Russell, 691 So.2d at 937. It is our opinion that Judge Martin has not violated the Judicial Canons, so as to bring her “judicial office into disrepute” under Article 6, Section 177(A) of Mississippi Constitution. Id.
¶ 18. In our analysis, we examine the interplay of the Mississippi Constitution Article 6, Section 177A, and the Canons of the Code of Judicial Conduct, as well as Article 3, Section 29 of the Mississippi Constitution and the grounds for sanction-able conduct as outlined in our decision in Carr. Judge Martin identified a variety of statutes which led to her confusion and her failure to abide by the Constitutional requirement, and thus argues her actions do not constitute willful misconduct. Judge Martin cited Section 99-5-11 of the Mississippi Code of 1972, as amended, which authorizes Justice Court Judges to require such bail as the justice or conservator of the peace may require, which she argues impliedly authorized the denial of bail in proper cases. Additionally, Judge Martin contends that Section 9-11-18 of the Mississippi Code of 1972, as amended, gives Justice Court Judges similar powers as authorized for a Municipal Court Judge, which under certain conditions found in Section 21-23-7 of the Mississippi Code, allows a Municipal Judge to refuse bail. Rule 3.04 of the Uniform Rules of Procedure for Justice Court authorizes the Judge to set bail using the “judge’s own discretion.” Judge Martin testified she was unfamiliar with Article 3, Section 29 of the Mississippi Constitution, which grants authority to deny bail only to County and Circuit Judges. Judge Martin maintains that if she made a mistake, it was an honest mistake. Furthermore, she testified without contradiction from others, that the issue was never addressed in her training or at judicial seminars she attended.
¶ 19. Before formulating its ultimate opinion, the Court examined the evidentia-ry record, as well as each Canon, to determine if clear and convincing evidence existed of a violation of a specific Canon under which she was charged, to bring *1265 such conduct under the constitutional provisions.

CANON 1—A Judge Shall Uphold the Integrity and Independence of the Judiciary

¶ 20. Canon 1 of the Code of Judicial Conduct provides:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code should be construed and applied to further that objective.
¶ 21. The commentary to Canon 1 states that “although judges should be independent (defined as acting without fear or favor), they must comply with the law.” This Court has recently clarified that Canon 1 “emphasizes failures which rise to the level of impugning the independence of the judiciary.” Miss. Comm’n on Judicial Performance v. Former Judge U.U., 875 So.2d 1083, 1088 (Miss.2004). The Commission urges that twice denying Schifano bail violates the mandate of the Mississippi Constitution. We agree. The Commission then concluded these errors ipso facto are clear and convincing evidence of a breach of this Judicial Canon. We are unable to make the same quantum leap in the absence of clear and convincing proof.
¶22. We cannot agree with the Commission’s conclusion that Judge Martin’s purposefully violated Canon 1. Judge Martin testified she was under the honest belief that she had the authority to deny bond. She further testified that she was not aware of any distinction in the law between justice court judges and circuit judges insofar as denial of bond. Judge Martin was confused that the constitutional right to deny bail enjoyed by the judges of the circuit and county court did not extend to justice court. Although Judge Martin failed to comply with Article 3, Section 29, her actions do not arise to sanctionable conduct; albeit she made an error in judgment. However, there is no corollary that an honest error equates to a violation of the integrity and independence of the judiciary. We are required on a regular basis to reverse cases, where scholarly, well-intended judges err in applying the correct law. Accordingly, this Court finds that Judge Martin did not fail to uphold the integrity and independence of the judiciary.

CANON 2—A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All His Activities

¶ 23. Canon 2A of the Code of Judicial Conduct provides: “A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.”
¶24. The commentary to Canon 2A further states that “Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges.” The Commission concluded that Judge Martin’s vio *1266 lation of Schifano’s constitutional rights was evidence of her failure to respect or comply with the law, and accordingly, brought the integrity and impartiality of the Justice Court of Lincoln County, Mississippi, into question and therefore eroded public confidence in the judicial system.
¶25. We disagree. Commentary to Canon 2A defines actual impropriety as “violations of law” while “the test for appearance of impropriety is whether, based on conduct, the judge’s impartiality might be questioned by a reasonable person knowing all the circumstances.” It appears that there was no appearance of impropriety, as Judge Martin’s decision to deny bond to Schifano, whom she described as a “public menace,” was based upon the testimony and opinions of the putative victim, relatives, arresting officers and court clerks, combined with a lack of training. It is also evident that there is no actual impropriety as Judge Martin’s conduct was based upon lack of knowledge and appreciation of the controlling law, not a willful desire to disregard the Constitution or to fail to treat Schifano impartially. This conduct calls neither her integrity nor her impartiality into question; therefore, the public’s confidence in either or both does not come into play. This Court finds that Judge Martin did not violate Canon 2A.
CANON 3 — A Jvdge Should Perform the Duties of His Office Impartially and Diligently
¶ 26. Canon 3B addresses adjudicative responsibilities. The Commission found that Judge Martin violated Canon 3B(1), 3B(2), 3B(4), SB(7) and 3B(8).
¶ 27. Canon 3B(1) states: “A judge shall hear and decide all assigned matters within the judge’s jurisdiction except those in which disqualification is required.”
¶ 28. The Commission urges that Judge Martin refused to hear Schifano on the question of bail when he was entitled to same pursuant to Article 3, Section 29 of the Mississippi Constitution. We do not agree with the Commission that Judge Martin violated Canon 3B(1). The Schifa-no matter was within Judge Martin’s jurisdiction, and there is no evidence in the record to indicate disqualification was required. Judge Martin was authorized to hear and decide Sehifano’s case. Additionally, after entering a not guilty verdict for Schifano, Judge Martin later recused herself from a subsequent similar case upon Schifano’s request. A judge from another county entered a guilty verdict on the August 26, 2003, charge against Schifano.
¶ 29. Further, Judge Martin believed that she had the authority to deny bail in accordance with the statutes found in the Mississippi Code, as well as the Uniform Rules of Procedure for Justice Court. Judge Martin testified that in her five years on the bench no one has questioned her authority to deny bond. She testified no manuals or procedural handbooks exist on whether or not justice court judges can deny bail. No conflicting evidence was presented; therefore, it is our opinion that Judge, Martin did not violate Canon 3B(1).
¶ 30. Canon 3B(2) states: “A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan *1267 interests, public clamor, or fear of criticism.” The Commission urges that Judge Martin was not faithful to the law, and Judge Martin did not maintain professional competence in it. Although Judge Martin is a not a lawyer, she has attended the Judicial College and has had to successfully pass eighteen hours of continuing education each year. Judge Martin met these required standards and attempted to maintain her professional competence. Judge Martin legitimately believed she had the authority to deny bail, as do the judges of the circuit and county courts. Judge Martin erred in her decision to deny bail; however, this error was based upon Martin’s lack of knowledge. This error was not made malevolently or as an abuse of office. Judge Martin has stated denial of bail was not addressed in any training or judicial seminars that she attended. In denying bail for Schifano, Judge Martin was not “swayed by partisan interests, public clamor, or fear of criticism.” Canon 3(B)(2). No evidence was presented that Judge Martin was less than faithful to the law as she understood it. We do not find her conduct to be in violation of Canon 3(B)(2).
¶ 31. Canon 3B(4) requires:
Judges shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom they deal in their official capacities, and shall require similar conduct of lawyers, and of their staffs, court officials, and subject to their direction and control.
¶ 32. The Commission urges that Judge Martin was neither patient, dignified, nor courteous to Schifano when she twice denied him bail on bailable misdemeanor charges. The Commission seizes upon Judge Martin’s reference to Schifano as a “public menace,” despite the fact she had found him not guilty on the prior charges filed against him. We disagree with the Commission. Both the exhibits and transcript reveal that Judge Martin made her decision to deny bail on Schifano’s misdemeanor charge because of the statements of the arresting officers, information received from court clerks, the frequency of Schifano’s alleged multiple offenses against his estranged wife, and her misunderstanding of the applicable law. However, this Court fails to find clear and convincing evidence in the record that Judge Martin was not patient, dignified, and courteous to the litigant, Schifano. We find the claim of a Canon 3B(4) violation against Judge Martin is without merit.
¶ 33. Canon 3B(7) states, in pertinent part:
A judge shall accord to all who are legally interested in a proceeding, or their lawyers, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding.
¶ 34. The Commission urges that Schi-fano had a right to be heard on the issue of bail and that Judge Martin refused that right. Schifano was afforded multiple hearings. Judge Martin testified that no ex parte conversations with either party existed and she had no preconceived notion of Schifano’s guilt or innocence during his August 13, 2003, trial which resulted in his acquittal.
 ¶ 35. Conversations with a court clerk are not considered ex parte communications prohibited under Canon 3B(7). Judge Martin was fully permitted to obtain *1268 information from court personnel as enumerated in the list of exceptions located in Canon 3B(7)(b)-(e). Judge Martin’s decision to deny bond after Schifano’s second and fourth arrest did not contravene Canon 3B(7).
¶ 36. Canon 3B(8) provides: “A judge shall dispose of all judicial matters promptly, efficiently, and fairly.” The Commission urges that Judge Martin did not dispose of Schifano’s request for bail promptly, efficiently or fairly. Instead, the Commission urges that Judge Martin improperly denied bail on two occasions and made Sehifano spend approximately fourteen days in jail. Judge Martin testified that she set no bail for the June 5, 2003, charge because of the arresting officers’ statements regarding the defendant and also because she took into account the previous May 28th bond and subsequent allegation. With respect to the second occasion when Judge Martin denied bail to Sehifano, she argues that she held the hearing for Sehifano’s August 26, 2003, arrest on the next business day after he submitted his request on Friday, August 29, 2003, which due to the Labor Day holiday was Tuesday, September 2, 2003. We find that Judge Martin exercised judicial discretion, and disposed of the Schifa-no matter promptly, efficiently and fairly within her understanding of the controlling law. There is no evidence that Judge Martin acted in contravention of the Code of Judicial Conduct when making this decision. Judge Martin did not violate Canon 3(B)(8).
CONCLUSION
¶ 37. Our review of this case does not support the Commission’s recommendation to publicly reprimand and suspend Judge Martin from office for thirty days without pay. A simple mistake in the face of reasonable efforts to base decisions on controlling law is not sanctionable. To find otherwise could subject any judge to disciplinary action for honest errors. If one were to extend the Commission’s logic to all cases, every judge, who honestly erred in determination of the appropriate law, would be subject to judicial performance review and possible sanctions. This result would most certainly disrupt the efficiency and independence of the judiciary, a consequence neither intended nor contemplated by the authors of the Constitution or the Canons of Judicial Conduct.
¶38. In matters of judicial performance, this Court scrutinizes the conduct of a judge on an individual basis. An unsupported claim of ignorance will not insulate a judge from sanctions. This Court has previously sanctioned judicial officials who claimed ignorance. In the case of In re Collins, 524 So.2d 553 (Miss.1987), a judge was removed from office by this Court for failure to keep records, imposing excessive fines, and utilizing prisoners for personal and county use. In the case of In re Gunn, 614 So.2d 387 (Miss.1993), a judge was sanctioned for “fixing” or improperly dismissing tickets. In the case of In re Stewart, 490 So.2d 882 (Miss.1986), a judge was removed from office for converting money to his own use which came to him by virtue of his office and for falsifying records to cover up this misconduct. In the case of In re Garner, 466 So.2d 884 (Miss.1985), a judge was removed from office for receiving for his own benefit, fines and penalties paid to the county. In the case of In re Anderson, 451 So.2d 232 (Miss.1984), a judge was removed from office for knowingly committing perjury and improperly failing to refund garnishment costs.
*1269 ¶ 39. However, each of these cases are clearly distinguishable from the case sub judice. The errors of Judge Martin clearly do not rise to the level of judicial misconduct exhibited in any of the aforementioned cases. In each of those cases, this Court found that a mistake of law was indeed made, but the mistake was more than a mere error in judgment; therefore, sanctions were appropriate.
¶ 40. In this case, no proof was presented that Judge Martin exhibited bad faith or gross unconcern in exercising her duties as outlined in In Re Lloyd W. Anderson, 412 So.2d at 745. In the case sub judice, Judge Martin made an error in judgment, and she will not be sanctioned by this Court for her mistake.
¶ 41. We, who sit on the bench, strive to be fair and make well-reasoned decisions; however, we will never attain a standard of perfection. Our wish is that errors would never occur. Our more realistic hope is that only a minimum number of errors will occur. Generally, these errors are corrected by the erring judge on motions to reconsider. When this procedure fails, our system provides additional safeguards in the form of our appellate courts. It is our duty to judge based upon the facts and law of each particular ease that comes before us; and in the case sub judice, we find that clear and convincing evidence of judicial misconduct is not present. Therefore, we reject the Commission’s findings of fact, conclusions of law, and recommendations and finally dismiss its complaint against Judge Martin with prejudice. ■
¶ 42. DISMISSED WITH PREJUDICE.
SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ„ CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.

. Miss. Const. Art. 3, § 29, states:
(1) Excessive bail shall not be required, and all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses (a) when the proof is evident or presumption great; or (b) when the person has previously been convicted of a capital offense or any other offense punishable by imprisonment for a maximum of twenty (20) years or more.
(2) If a person charged with committing any offense that is punishable by death, life *1261 imprisonment or imprisonment for one (1) year or more in the penitentiary or any other state correctional facility is granted bail and (a) if that person is indicted for a felony committed while on bail; or (b) if the court, upon hearing, finds probable cause that the person has committed a felony while on bail, then the court shall revoke bail and shall order that the person be detained, without further bail, pending trial of the charge for which bail was revoked. For the purposes of this subsection (2) only, the term "felony” means any offense punishable by death, life imprisonment or imprisonment for more than five (5) years under the laws of the jurisdiction in which .the crime is committed. In addition, grand larceny shall be considered a felony for the purposes of this subsection.
(3) In the case of offenses punishable by imprisonment for a maximum of twenty (20) years or more or by life imprisonment, a county or circuit court judge may deny bail for such offenses when the proof is evident or the presumption great upon making a determination that the release of the person or persons arrested for such offense would constitute a special danger to any other person or to the community or that no condition or combination of conditions will reasonably assure the appearance of the person as required.
(4) In any case where bail is denied before conviction, the judge shall place in the record his reasons for denying bail. Any person who is charged with an offense punishable by imprisonment for a maximum of twenty (20) years or more or by life imprisonment and who' is denied bail prior to conviction shall be entitled to an emergency hearing before a justice of the Mississippi Supreme Court. The provisions of this subsection (4) do not apply to bail revocation orders.

. Miss. Const. Art. 6, § 177A, subsections (b) and (e), state:
On recommendation of the commission on judicial performance, the supreme court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: (b) willful misconduct in office; or
(e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute; and may retire involuntarily any justice or judge for physical or mental disability seriously interfering with the performance of his duties, which disability is or is likely to become of a permanent character.