KITCHENS, Justice,
Dissenting:
¶ 35. Today’s post-resignation removal of former County Court Judge Solomon C. Osborne perhaps marks the end of this Court’s oft-repeated and, unfortunately, in *26 effectual attempts to entreat him to conform his behavior to the high ethical standards to which our state’s judicial officials are properly held. Judge Osborne’s continuing presence on the dockets of the Commission on Judicial Performance and of this Court has been largely of his own making. But this case, standing alone and examined under the light of our ever-evolving precedent, does not merit the judgment leveled by the majority. Therefore, I respectfully dissent.
¶ 36. Article 6, Section 177-A, of the Mississippi Constitution empowers this Court, upon recommendation by the Commission, to subject to discipline any judge for, among other causes, “willful misconduct in office” or other “conduct prejudicial to the administration of justice which brings the judicial office into disrepute[.]” Miss. Const, art. 6 § 177-A(b), (e).
¶ 37. Willful misconduct, we have rightly held, “is the improper or wrongful use of power of his office by a judge acting intentionally or with gross unconcern for his conduct and generally in bad faith.” Miss. Comm’n on Judicial Performance v. Carr, 786 So.2d 1055, 1058 (Miss.2001). This is a high standard requiring evidence of “[a] specific[ ] intent to use the powers of the judicial office” for ill purposes. Miss. Comm’n on Judicial Performance v. Sanford, 941 So.2d 209, 212 (Miss.2006). But we also have held that “negligence, ignorance, and incompetence suffice as grounds for behavior to be classified as prejudicial to the administration of justice which brings the judicial office into disrepute....” Id. at 1059 (citing In re Quick, 553 So.2d 522, 527 (Miss.1989)). “[A] judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.” Miss. Comm’n on Judicial Performance v. Boykin, 763 So.2d 872, 875 (Miss.2000). Such a construction of Section 177-A is hard to fit into a system of jurisprudence in which appellate courts regularly adjudicate that other jurists have made erroneous legal judgments, which, in many cases, are found to amount to abuses of discretion, yet are not deemed judicial misconduct. Surely the Mississippi Constitution does not contemplate that we reserve the right to sanction any judge who renders a decision negligently but otherwise in good faith. A conclusion to the contrary implies that every reversal handed down by this Court should be accompanied by a finding of misconduct.
¶ 38. The Court implicitly recognized as much four years ago in Mississippi Commission on Judicial Performance v. Martin, 921 So.2d 1258 (Miss.2005). In that case, the Court identified several cases in which “mistake[s] of law w[ere] indeed made, but the mistake[s] w[ere] more than ... mere error[s] in judgment; therefore, sanctions were appropriate.” Id. at 1269. But in Martin, “no proof was presented that Judge Martin exhibited bad faith or gross unconcern in exercising her duties,” and the Court concluded only that she “made an error in judgment....” Id.
¶39. We are left, therefore, with conflicting interpretations: the rule outlined in Sanford and Boykin, which permits sanctions under Section 177~A(e) for decisions made “through negligence or ignorance not amounting to bad faith,” Boykin, 763 So.2d at 875, and the far wiser reasoning of the Martin Court, which declined to render sanctions in a case absent proof of “bad faith or gross unconcern.... ” Martin, 921 So.2d at 1269. Though I am mindful that the former interpretation dates back nearly 30 years in our jurisprudence, see In re Anderson, 412 So.2d 743 (Miss.1982), Martin provides, in my mind, the more just and more reasonable ap *27 proach. Martin conveyed to Mississippi judges the clear message that them mistakes of law, even if incorrect, will not subject them to professional discipline so long as their errors are not rendered in bad faith. To the extent that the well reasoned pronouncement of Martin abrogates the holding of Anderson, we should stand by that abrogation. Instead, today we seriously undermine the sound wisdom of Martin, and in so doing, we yank an important and readily understood rug from underneath the feet of this state’s judiciary.
¶ 40. Next, we should recognize that the evidence presented to the Commission regarding this complaint was inadequate to prove the ulterior motive with which the Commission alleges that Judge Osborne acted. Judge Osborne presented evidence, uncontradicted by the Commission, that he learned only after originally releasing L.K. that the conflict culminating in the allegations of her gun brandishment was one of longstanding and escalating nature. This, according to Judge Osborne, persuaded him that L.K. should be held pursuant to Section 43 — 21—301 (3)(b)(i) of the Mississippi Code.[3] This evidentiary void falls far short of the clear and convincing evidence we have said would be a prerequisite to our adoption of the Commission’s recommendations for disciplinary action. See Maj. Op. at 8 (citing Miss. Comm’n on Judicial Performance v. Thompson, 972 So.2d 582, 585 (Miss.2008)).
¶41. Therefore, as I would require a showing of a degree of culpability far greater than mere negligence, and, unpersuaded by the evidence as I am, I would not endorse the Commission’s determination that Judge Osborne’s conduct in this case was prejudicial to the administration of justice which brings the judicial office into disrepute, in violation of Section 177-A(e). Likewise, because the charge of willful misconduct requires a showing of specific intent to pervert judicial authority, I also would reject the Commission’s conclusion that Judge Osborne violated Section 177-A(b). We may conclude some years after the dust of these facts has settled, that Judge Osborne’s decision to act in this case, while at the same time recusing himself, was an erroneous one. Certainly, a detention hearing was required to determine whether L.K. should be retained. See Miss.Code Ann. § 43-21-309 (Rev.2004). But absent as the record is of proof that Judge Osborne committed this error with “bad faith or gross unconcern,” Martin, 921 So.2d at 1269, this Court is constitutionally powerless to sanction him for what has not been sufficiently proven to have been more than a mistake of law. The Commission’s heavy implication is that Judge Osborne meted out this unfavorable and ultimately erroneous ruling only upon learning that Lawyer Lee Abraham, who at the time represented a party suing Judge Osborne, had been retained to represent L.K. But aside from this revelation and the fact that Judge Osborne’s ruling conflicted with governing law, no evidence has been presented that suggests that Abraham’s impending involvement led the judge, directly or indirectly, to reach his decision. Truly, the Commission has woven together nothing *28 more than a theory, which it has failed to prove by clear and convincing evidence.
¶ 42. Likewise, the Commission has not shown that Judge Osborne violated Canon 1 of the Code of Judicial Conduct when he failed to hold a detention hearing and when, without authority to do so, he attempted to appoint Lawyer James K. Lit-tleton to hear L.K.’s case in his stead. Canon 1 commands this state’s judges to “establish [], maintain [], and enforc[e] high standards of conduct ... so that the integrity and independence of the judiciary will be preserved.” The term “integrity and independence of the judiciary” references a vague concept, but a review of the canon’s comment is helpful: “The integrity and independence of judges depends in turn upon their acting without fear or favor.” It stands to reason, then, that, amorphous though these notions may be, a judge necessarily impugns the integrity and independence of the judiciary when he or she acts out of fear or favor. The record supports no indication, let alone proof, that Osborne was so motivated. The Commission has not accused Judge Osborne of acting to bestow favor upon anyone, and there is no suggestion that he was afraid. Canon 1 should not be seen or utilized as a “catch-all” provision that can be thrown in for good measure. In the absence of credible evidence to support such a charge, it is best reserved for eases in which there is a genuine issue of a judge’s having been motivated to act out of fear or favor.
¶ 43. Similarly, the Commission has failed to demonstrate a clear violation of Canon 2(A). Though both of the judge’s above-described legal failures amounted to judicial error, neither rose to the level of impropriety or the appearance thereof with which Canon 2 concerns itself. Indeed, Canon 2 primarily addresses limits on judges’ conduct, such as prohibitions against “lend[ing] the prestige of their offices to advance the private interests of the judges or others,” Code of Judicial Conduct, Canon 2(B), or “holding] membership in any organization that practices invidious discrimination on the basis of race, gender, religion or national origin.” Id. at 2(C). Though Judge Osborne’s course of action in this case left much to be desired, his decisions simply do not amount to the kinds of impropriety proscribed by Canon 2(A).
¶ 44. These determinations leave unaddressed only the Commission’s conclusion that Judge Osborne violated Canon 3(E) by continuing to act in the case even after entering an order of recusal. “The test for recusal of a judge is stated as follows: ‘Would a reasonable person, knowing all the circumstances, harbor doubts about the judge’s impartiality?” Copeland v. Copeland, 904 So.2d 1066, 1071 (Miss.2004) (quoting In re Conservatorship of Bardwell, 849 So.2d 1240, 1247 (Miss.2003)). Judge Osborne himself appears to have determined, by virtue of his sua sponte recusal, that this question should be answered affirmatively.[4]
*29 ¶ 45. However, the comment to Canon 3(E) imparts that “[b]y decisional law, the rule of necessity may override the rule of disqualification.” A legal determination that Judge Osborne’s recusal rendered him impotent to render further action in the case is one thing. But given the revelation to the judge of the allegation that the underlying confrontation involving a firearm was but a chapter in a long and sordid tale, the length of which he had been unaware, and the ethical rock and real-life hard place between which that revelation placed him, this Court should not, with the benefit of hindsight, condemn his decision. Neither the record presented by the Commission nor today’s majority opinion addresses the question of whether Judge Osborne’s voluntary and self-imposed disqualification was overridden by his duty as a conservator of the peace.
¶ 46. This Court’s responsibility to review ethical complaints and punitive recommendations is not a joyful duty. The unseemliness of the process grants no excuse for skirting our duty, of course; but unless the facts of a case are clear and convincing so that we, as overseers of the state’s judiciary, are left with no alternative but to order expulsion, we should not exercise that authority in marginal cases such as this, or even in close cases more convincing than the one before us today. The career of Judge Osborne is one that is not likely to be lauded in the ethics textbooks pondered by future Mississippi law students. But in a state where the power to select judges has been retained by the people, the decision of whether a member of the judiciary no longer deserves to serve is a matter best left to the electorate in all but the most egregious cases. Judge Osborne’s previous misbehavior notwithstanding, this is no such case.
¶ 47. Therefore, I would decline to accept the Commission’s findings that Judge Osborne violated Section 177-A of the Mississippi Constitution and Canons 1, 2(A), and 3(E) of the Code of Judicial Conduct. From the majority’s judgment to the contrary, I respectfully dissent.
DICKINSON, J., JOINS THIS OPINION.

. Notably, this provision of the Code commands youth court judges that “custody shall be deemed necessary" when “any person would be endangered by the childf.]” Miss. Code Ann. § 43-21-301 (3)(b) (Rev.2004). One would not be unreasonable, therefore, in arguing that Judge Osborne would have committed error by declining to remand L.K. to custody with the knowledge that the May 5, 2006, incident was not isolated in nature. We might very well be looking at an Osborne proceeding with a different and vastly more tragic set of facts had she harmed someone because the judge had not detained her.

. We should note, however, that Judge Osborne remanded L.K. to custody in the same order by which he recused himself from the case and appointed Littleton. To say, therefore, that Judge Osborne ‘'committed the minor child to detention after recusing from the case and, then, enterfed] an order appointing James K. Littleton to hear the case without authority” does not provide a clear description of the timeline. Maj. Op. at 14 (emphasis added). A more complete account would be to say that Judge Osborne took three concurrent actions: his recusal, his appointment of Mr. Littleton, and his remand of L.K. to custody. Whether these simultaneous actions constituted misconduct is, of course, another question altogether; but I believe this to be the view of the facts that should govern the analysis.