KITCHENS, Justice,
dissenting:
¶ 38. Today’s plurality opinion announces a new standard of review for judicial performance cases that reach us via agreed recommendations: This Court no longer will conduct an “independent inquiry of the record,” but, instead, “where, as here, the judge and Commission agree on the facts, we ordinarily will accept the *898 findings as true.” Plur. Op. ¶ 8. Because I cannot embrace this new standard, and because the agreed facts in the present case do not provide us a clear factual basis sufficient to support a finding that Judge Smith engaged in judicial misconduct, I respectfully dissent.[30]
¶ 39. According to our rules, this Court is charged with “prepar[ing] and publishing] a written opinion and judgment directing such disciplinary action, if any, as it finds just and proper.” Miss. Comm’n on Judicial Performance R.10E. Our opinion and judgment are to be based on a “review of the entire record,” and this Court may “accept, reject, or modify, in whole or in part, the findings and recommendation of the Commission.” Miss. Comm’n on Judicial Performance R.10E. While there may be cases in which this Court “may simply choose to defer to the Commission,” Mississippi Commission on Judicial Performance v. Neal, 774 So.2d 414, 417 (Miss.2000) (citing In re Bailey, 541 So.2d 1036, 1040 (Miss.1989)), it should not be that agreed recommendations ordinarily will receive our automatic approval, for to do so would be inconsistent with this Court’s duty to make an independent inquiry of the record before deciding each case. Miss. Comm’n on Judicial Performance v. Boone, 60 So.3d 172, 176 (Miss.2011) (quoting In re Removal of Anderson, 412 So.2d 743, 746 (Miss.1982)).
¶ 40. In two recent cases, we rejected the Commission’s recommended sanctions of two justice court judges for their having passed several driving under the influence of alcohol (DUI) cases to the inactive files upon in-court recommendations of the county prosecuting attorney. Miss. Comm’n on Judicial Performance v. Little, 72 So.3d 501 (Miss.2011); Miss. Comm’n on Judicial Performance v. McGee, 71 So.3d 578 (Miss.2011). We held that the Commission erroneously had found, and the accused judges had agreed, this practice to be prohibited by statute, which, we held, it is not. A sentencing trial court judge has the duty to determine in criminal cases that are resolved by agreement between the prosecution and the defendant that there is, indeed, a factual basis for the guilty plea, and that the prosecution’s sentencing recommendation, if any, is within prescribed parameters. Similarly, we, as the Court with the ultimate responsibility for meting out sanctions in judicial performance eases, have a solemn obligation to ascertain whether the agreements reached between the Commission on Judicial Performance and accused judges have sound factual bases, and, if so, whether the conduct which an accused judge admits actually amounts to violation of Mississippi’s Code of Judicial Conduct. See Miss. Comm’n on Judicial Performance v. Sanford, 941 So.2d 209, 217-18 (Miss.2006) (holding that a joint recommendation is “akin to a criminal defendant entering into a plea agreement with the prosecution, whereby the defendant agrees to plead guilty to the offense in return for the prosecution’s promise of a specific recommended sentence to the judge for consideration”); URCCC 8.04 A(3) (“Before the trial court may accept a plea of guilty, the court must determine that ... there is a factual basis for the plea.”)
¶ 41. In the present case, Judge Smith is being sanctioned for “wrongly imposing contempt sanctions against two lawyers and a bail bondsman,” for addressing these individuals “discourteously,” and for telling a defendant, “if you’re convicted, I’m gonna get you.” Plur. Op. ¶¶ 2, 11. However, *899 based on the agreed facts and the record before us, I would not accept the Commission’s determination that Judge Smith’s conduct in these regards is sanctionable.
¶ 42. For instance, the plurality does not specify how Judge Smith was discourteous; but according to the agreed facts, “Canons 2A and 3B(4) were violated when Respondent addressed counsel and Mr. Sanders discourteously in court by addressing them by their last names only or as ‘lawyer’ and not extending to those individuals the usual common courtesy and dignity of addressing them as ‘Mister.’ ” Yet, in writing its own opinion, the plurality has done the same thing, referring to a litigant, Richard Becton, as “Becton,” to a bail bondsman, Marshall Sanders, as “Sanders,” to two attorneys, Robert Little and Charles Graves, as “Little” and “Graves,” and to Circuit Court Judge Shirley C. Byers as “Byers.” A random and cursory perusal of this Court’s decisions over many years reveals that we, as well as most, if not all, other appellate courts in the United States, routinely refer to litigants, lawyers, clerks, public officials of all kinds, and other jurists, including members of the United States Supreme Court, by their surnames only. Likewise, I cannot discern how referring to counsel as “lawyer” is any more of an insult than referring to the bench as “judge.” During my long career at the Bar, I deemed it a high honor to be addressed as “lawyer.”
¶ 43. The plurality finds that “the proof-in-the-pudding in this case is that Judge Smith agreed his ‘demeanor during the hearings was confrontational and discourteous to counsel ...,’ and we take him at his word.” Plur. Op. ¶ 12 (emphasis added). Thus, despite its protestations to the contrary, the plurality is not conducting its “own independent inquiry of the record.” Plur. Op. n. 4. Moreover, the entire statement in the agreed facts reads as follows: “Respondent’s demeanor during the hearing was confrontational and discourteous to counsel as evidenced by the attached transcript and included audio recording.” (Emphasis added.) The plurality gives no indication that its decision is based on an independent review of the transcript and recording. Finally, this statement in the agreed facts refers only to Judge Smith’s interactions with Little and Graves and not Becton.
¶ 44. Judge Smith’s other interactions with Defendant Richard Becton are easily understood and are not at all disturbing to this justice, who practiced law in Mississippi’s criminal courts for well over forty years. His question to Becton, ‘You don’t take these charges serious[ly] do you?” was addressed to an indictee who appeared for arraignment without an attorney. This clearly was an effort by the judge to impress on the accused the importance of his having counsel to attend and represent him in court on a felony charge. There can be no dispute that Becton needed an attorney. The judge was trying to convince him of the importance and urgency of obtaining one. It was in this context, and for this purpose, that the judge continued, “I would suggest you call [your counsel] ‘cause if you are convicted, I’m going to get you.” Rather than an impermissible threat, I view this as a constructive and emphatic effort on the judge’s part to impress upon Becton the gravity of his situation, and the certainty that, if he were found guilty, the day would come when he would be brought before Judge Smith for sentencing. Instead of tip-toeing around the serious matters at hand, the judge, in no uncertain terms, made it plain to Bec-ton that it was his responsibility to get in touch with his lawyer in order to have the benefit of the lawyer’s assistance in circuit court. In so doing, Judge Smith was fulfilling the duty that this Court imposes on Mississippi’s circuit judges to be vigilant in *900 helping accused persons understand the importance of being represented in court by legal counsel. See Patton v. State, 34 So.3d 563 (Miss.2010) (reversing criminal conviction because defendant was not warned of the dangers and disadvantages of self-representation) (citing Faretta v. California, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); URCCC 8.05).
¶45. Regarding the contempt orders, Judge Smith’s rulings are more akin to a mistake of law rather than a willful, sanc-tionable abuse of contempt power. See Miss. Comm’n on Judicial Performance v. Martin, 921 So.2d 1258, 1263 (Miss.2005) (denial of bond not sanctionable when judge’s actions were based on honest, yet mistaken, understanding of constitutional rights). When the county prosecutor appealed his contempt convictions, the Office of the Attorney General defended Judge Smith, which included the Attorney General’s filing a petition for writ of certiorari with this Court after the Court of Appeals had reversed and rendered. Graves v. State, 66 So.3d 148, 151 (Miss.2011) (citing Graves v. State, 66 So.3d 158 (Miss.Ct.App. 2010)). By defending the contempt citations, the Attorney General — the chief lawyer of this state — recognized that Judge Smith’s actions had an arguable basis in the law. The law of contempt is not so clear that the justices of this Court can always agree on such matters. See In re E.K., 20 So.3d 1216 (Miss.2009). Indeed, this Court reviewed the Graves case “to clarify certain aspects of the law of contempt.” Graves, 66 So.3d at 151. Simply because a judge erred in imposing contempt citations does not warrant a finding that the judge’s conduct was sanctionable. See e.g., C.K.B. v. Harrison County Youth Court, 36 So.3d 1267, 1276 (Miss.2010) (reversing contempt sanctions against child, his mother, and his counsel for an alleged violation of the court’s directive in other, unrelated cases); Brame v. State, 755 So.2d 1090, 1094 (Miss.2000) (holding that attorney’s gross negligence did not rise to the level of willful conduct required to support a finding of criminal contempt). Because the defense attorney was held in contempt for the same reasons as the county prosecutor, Judge Smith’s holding the defense attorney in contempt also fails to warrant a sanction from this Court.
¶ 46. The bail bondsman, Marshall Sanders, was held in contempt in a separate incident, but the plurality does not explain how Judge Smith’s actions in that instance were improper. According to the agreed findings of fact:
During the exchange with Mr. Sanders, Respondent threatened Mr. Sanders with contempt. At one point Mr. Sanders approached a deputy in the presence of the Respondent, placed his hands behind his back and offered to submit to arrest. Respondent ordered Mr. Sanders jailed for a week. Mr. Sanders did not appeal the Respondent’s order. The record does not reflect that Mr. Sanders requested bond or an attorney. Respondent alleges that he properly held Mr. Sanders in direct criminal contempt for talking in the courtroom. Respondent further alleges that, in his opinion, Mr. Sanders’ demeanor, attitude and gestures were disrespectful to the Court and warranted the use of the Court’s contempt power.
These findings are supported by the transcript of the proceedings, but neither the record nor the agreed findings suggests that Judge Smith willfully abused the court’s contempt power. Accordingly, I cannot agree that Judge Smith’s mistake of law warrants sanctions. Martin, 921 So.2d at 1263.
¶ 47. Because the agreed findings have failed to set forth clearly sanctionable con *901 duct, and because an independent review of the record reveals none, I would dismiss the joint motion asking us to approve the recommended sanctions. For the foregoing reasons, I respectfully dissent.
CHANDLER, J., JOINS THIS OPINION. CARLSON, P.J., JOINS THIS OPINION IN PART.

. I join Justice Randolph's separate opinion to the extent that he finds Judge Smith's actions did not involve moral turpitude.